**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Danny Shortridge**<br>285 Pattonsville Rd.<br>Jackson, OH 45640<br><br>and<br><br>**Craig Moore**<br>672 South Keller Road<br>Columbus, OH 43209<br><br>and<br><br>**Brenda Patton**<br>6389 Laurel Ridge Road<br>Piketon OH 45661<br><br>and<br><br>**Doug McLaughlin**<br>509 Coriell Road<br>Portsmouth, Ohio 45662<br><br>and<br><br>**Gary Entler**<br>806 Swift Creek Road<br>Beaver, Ohio 45613<br><br>and<br><br>**Dockie Tackett**<br>1768 Prosperty Road<br>Waverly, Ohio 45690<br><br>and<br><br>**Christine Buttermore**<br>100 Spring Valley Drive<br>Paducah, KY 42003 | **CASE NO.**<br><br>**JUDGE:**<br><br>**VERIFIED CLASS ACTION COMPLAINT FOR TEMPORARY RESTRAINING ORDER, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF**<br><br>**JURY DEMAND ENDORSED HEREON** |

|  |  |
|---|---|
| *Plaintiffs,*<br><br>    -vs.-<br><br>**Centrus Energy Corp.**<br>℅ Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>and<br><br>**Fluor-BWXT Portsmouth, LLC**<br>℅ Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>and<br><br>**Mid-America Conversion Services, LLC**<br>℅ Corporate Creations Network Inc.<br>101 North Seventh Street<br>Louisville, KY 40202<br><br>℅ Atkins Nuclear Secured, LLC, DE<br>℅ Corporate Creations Network Inc.<br>119 E. Court Street<br>Cincinnati, OH 45202<br><br>and<br><br>**Portsmouth Mission Alliance, LLC**<br>Ct Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>*Defendants.* |  |

For their Complaint against Defendants, Plaintiffs state as follows:

## INTRODUCTION

1. On September 9, 2021, President Biden issued Executive Order 14042 (the "Order").[1]

2. President Biden's Order, while not mentioning vaccines, required "parties that contract with the Federal Government to provide adequate COVID-19 safeguards to their workers…" *Id*.

3. The Order also required that, to the extent permitted by law, all existing and new contracts with the Federal Government, and those of subcontractors, include a clause requiring compliance with the Safer Federal Workforce Task Force (the "Task Force") guidance regarding COVID-19 safeguards.

4. After President Biden issued the Order, the Task Force issued guidance requiring vaccination.[2]

5. Task Force guidance called for federal contractor employees to be fully vaccinated by January 18, 2022, unless legally entitled to an accommodation for medical or religious reasons. *Id*, p. 5.

6. The Task Force guidance required contracts between the Federal Government and any contractor or subcontractor to contain a clause requiring compliance with the guidance. *Id,* p. 1.

7. On information and belief, in October 2021, contracts between the Department of Energy (DOE) and Defendants were modified to include a clause requiring implementation of a compliance plan resulting in a vaccination rate of 90% of Defendants' employees. The clauses provided that, in exchange for Defendants achieving a 90% vaccination rate, Defendants would receive payments in the range of $500,000 to $1,600,000 dollars. Ex.s 1 and 2.

---

[1] https://www.presidency.ucsb.edu/documents/executive-order-14042-ensuring-adequate-covid-safety-protocols-for-federal-contractors [last accessed 11/16/2021]

[2] https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf [last accessed 11/16/2021]

8. These cash payments, offered by the federal government in exchange for Defendants enforcing vaccine mandates, *provide such significant encouragement* that Defendants' actions regarding the COVID-19 vaccine mandates and exemptions are deemed in law to be that of the government. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

9. As such, Defendants' vaccine mandates are subject to the First Amendment of the U.S. Constitution, the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb et seq. and Section 564 of the Food and Drug and Cosmetics Act (FDCA), 21 U.S.C.§ 360bbb-3 regarding the right to refuse emergency authorized vaccines.

10. Defendants violated the First Amendment, RFRA, Plaintiffs bodily autonomy and right to refuse medical treatment and Section 564 of the FDCA by denying plaintiffs' requests for religious exemptions and coercing them to take emergency authorized vaccines as described below.

11. Defendants have also violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the ADA by failing to provide employees required medical or religious accomodations and by not engaging in an interactive process to provide reasonable accommodations.

12. This suit seeks to remedy Defendants' constitutional and statutory violations, and their discrimination against employees who requested religious and medical accommodations from Defendants' mandate that employees receive the COVID-19 vaccine.

13. Rather than complying with their obligations under the First Amendment, RFRA, Section 564 of the FDCA, the ADA, and Title VII, Defendants threatened to terminate Plaintiffs if they did not get vaccinated.

14. Defendants' constitutional and statutory violations, discrimination and retaliation have left Plaintiffs with the choice of taking the COVID-19 vaccine, at the expense of their religious beliefs and health, or losing their jobs.

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5 (f)(3).

16. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

17. Venue is proper under 28 U.S.C. § 1391 (b) because the events complained of occurred in this District and Division.

## PLAINTIFFS

18. Danny Shortridge lives in Jackson, Ohio and works for Fluor-BWXT Portsmouth, LLC. He has yet to be granted a religious or medical exemption.

19. Craig Moore lives in Columbus, Ohio and works for Portsmouth Mission Alliance (PMA). His religious exemption was denied.

20. Brenda Patton lives in Piketon, Ohio and works for Mid-America Conversion Services. (MCS). Her religious exemption was denied. She has an appointment with the EEOC.

21. Doug McLaughlin lives in Portsmouth, Ohio and works for FBP. His religious and medical requests for exemption were denied. He has filed a complaint with the EEOC.

22. Gary Entler lives in Beaver, Ohio and works for Centrus Energy Corporation.

23. Dockie Tackett lives in Waverly, Ohio and works for FBP. His religious exemption was denied.

24. Christine Buttermore lives in Paducah, Kentucky and is a recent MCS hire.

25. Plaintiffs, like most employees, must acquire and maintain security clearances to do their jobs.

## DEFENDANTS

26. Centrus Energy Corp. (Centrus) is a supplier of nuclear fuel and services for the nuclear power industry. It is a Delaware Corporation registered as a foreign entity in Ohio. It is in charge of a 3-year demonstration project at the American Centrifuge Plant to make high-assay, low enriched uranium fuel. It is regulated by the Nuclear Regulatory Commission (NRC) funded by the Department of Energy, Office of Nuclear Energy. It has about 200 employees onsite.

27. Fluor-BWXT Portsmouth, LLC (FBP) is the U.S. Department of Energy's (DOE) contractor for the decontamination and decommissioning of the Portsmouth Gaseous Diffusion Plant in Piketon, Ohio. It is an Ohio domestic limited liability company. It has about 2000 employees and subcontractors. FBP is overseen by the DOE Portsmouth Paducah Project Office.

28. Mid-America Conversion Services (MCS) is a joint venture led by Atkins Nuclear Secured, LLC, with Westinghouse Electric and Fluor Federal Services. The Office of Environmental Management awarded a five-year contract to Mid-America Conversion Services in September 2016 to assume operation and maintenance of conversion plants, maintenance and management of the specially designed storage cylinders and disposition of end products. MCS began operating the facilities under the approximately $320.5 million contract in February 2017. MCS is a Delaware Corporation registered as a foreign entity in Kentucky. Atkins Nuclear Secured, LLC is a Delaware Corporation registered as a foreign entity in Ohio. It has about 600 employees divided between the Portsmouth, Ohio and the Paducah, Kentucky sites.

29. Portsmouth Mission Alliance, LLC (PMA) is a joint venture between North Wind and Swift and Staley. The company was created to perform Infrastructure Support Services at the Portsmouth Plant. The current Facility Support Services contract began on April 25, 2016. The scope of work includes: Computer and Telecommunication Services; Security; Training; Records Management; Fleet Management; Non-Nuclear Facility Preventive and Corrective Maintenance; Grounds and Road Maintenance; Snow Removal; and Janitorial Services. PMA is an Ohio domestic limited liability company. It has about 300 employees.

## FACTUAL ALLEGATIONS

30. The Portsmouth Gaseous Diffusion Plant, in Pike County, Ohio, is operated by the DOE. The Plant produced enriched uranium for nuclear weapons and commercial nuclear reactors. In 1989, an environmental cleanup program began which continues today. In 2011, decontamination and decommissioning (D&D) of the Plant started. Over two thousand people work onsite in various capacities. The four Defendant companies are the primary contractors along with their subcontractors.

31. Contract modifications for BWXT-Portsmouth, LLC and MCS included additional payments of $1,600,000 and $500,000 respectively for these companies to achieve 90% vaccination rates. *Id.*

### A. The COVID-19 Pandemic and Response

32. By spring 2020, the novel coronavirus commonly known as COVID-19 spread world-wide.

33. Since then, at least three separate COVID-19 vaccines have been developed and authorized for use in the United States. The Food and Drug Administration ("FDA") issued an

Emergency Use Authorization ("EUA") for the Pfizer-BioNTech vaccine on December 1, 2020. One week later, the FDA issued a second EUA for the Moderna COVID-19 vaccine. Finally, the FDA issued an EUA for the Johnson & Johnson COVID-19 vaccine on February 27, 2021.

34. On August 23, 2021, the FDA issued full approval for the Pfizer vaccine Comirnaty for individuals 16 years of age and older. Pfizer's EUA also remains in place.

35. To date, the FDA has not issued any other vaccine approvals.

**B. The Task Force**

36. The Executive Order relies on the Federal Property and Administrative Services Act (FPASA), the Constitution, and the President's power under 3 U.S.C. § 301 to delegate his statutory authority. 86 Fed. Reg. 50,985 (Sept. 9, 2021).

37. The Executive Order requires departments and agencies to require contractors and subcontractors to "comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force, provided that the Director of the Office of Management and Budget (OMB) approves the Task Force Guidance and determines that the Guidance… will promote economy and efficiency in Federal contracting." Id.

38. The Executive Order required the Task Force to issue this guidance by September 24, 2021 directing the OMB Director, pursuant to the President's delegation of his power under the FPASA, to determine whether the Task Force guidance will promote economy and efficiency in federal procurement. Id. at 50,985–86.

39. The Executive Order applies to new contracts, contract-like instruments, new solicitations for contracts or contract-like instruments, and extensions or renewals of contracts or contract-like instruments if the extension or renewal occurred on or after October 15, 2021. Id. at 50,987.

40. The Executive Order also authorized the Task Force to update guidance on a continuing basis, subject to re-approval by the OMB Director. *Id*.

41. To the extent the government requires compliance with "updates" to the Task Force guidance that the Office of Management and Budget Director has not approved, this raises the issue of the Task Force's lack of authority.

42. Delegation of power under 3 U.S.C. § 301 must be made to officials appointed by the President and confirmed by the Senate. The Task Force includes officials not appointed under the Appointments Clause.

43. On September 24, 2021, the Task Force released its initial guidance to federal agencies. Safer Federal Workforce Task Force, COVID–19 Workplace Safety: Guidance for Federal Contractors and Subcontractors ("Task Force Guidance").[3]

44. The Task Force Guidance requires federal contractors and subcontractors to mandate "COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation." *Id*. at 5. "[C]overed contractor employees" are to be "fully vaccinated" by January 18, 2022—meaning said employees must obtain the final dose of their vaccine of choice no later than January 4, 2022, as "[p]eople are considered fully vaccinated for COVID-19 two weeks after they have received the second dose in a two-dose series, or two weeks after they have received a single-dose vaccine." *Id*. at 4.

45. Task Force Guidance was not published in the Federal Register for public comment, did not incorporate a required 60-day comment period, nor did it include a waiver from an authorized officer indicating that "urgent and compelling circumstances ma[d]e compliance

---

[3] https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf [last accessed 11/16/2021]

9

with" notice and comment and the effective period impracticable, see 41 U.S.C. § 1707(d), or otherwise exempt from notice and comment, see 5 U.S.C. § 553(b).

46. As discussed above, the Task Force guidance required federal contractors and subcontractors to add clauses to their contracts with the Federal Government requiring compliance with Task Force guidance.

47. As discussed above, the Federal Government required Defendants to add a clause requiring an employee vaccination rate of 90%.  This forced Defendants to limit exemptions to 10% of their employees.  In exchange for this requirement, the Federal Government agreed to pay amounts ranging from $500,000 to $1,600,000.  *Id.*

**C. Defendants' Vaccine Mandates**

48. On or about October 13, 2021, Defendants announced all employees must get a COVID-19 vaccine.

49. When Defendants announced the vaccine mandate, they stated that employees could request accommodations for religious or health reasons consistent with Equal Employment Opportunity Commission ("EEOC") guidance on private employers issuing such mandates. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws§§* K.l & K.2., EEOC (May 28, 2021).[4]

50. As noted, the FDA approved Pfizer's COVID-19 Comirnaty vaccine on August 23, 2021. Upon information and belief, Comirnaty is not available to the general public in the United States.

---

[4]

https://https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws [last accessed 11/16/2021]

51. Accordingly, Defendants' employees must receive the single dose Johnson & Johnson vaccine, or at least the first dose of the two-part Moderna or Pfizer BioNTech COVID-19 vaccine by 11-17-2021 in order to be "fully vaccinated" by 12-1-2021.

52. Other than Centrus, Defendants' mandate is absolute. There is no alternative for periodic testing, mask wearing, or social distancing, even for employees who had COVID-19 and have immunity. For example, on November 2, 2021, Human Resources for MCS told employee Brenda Patton that MCS did not grant any religious exemptions. MCS employees must choose vaccination or termination.

53. While Centrus has exempted certain employees, it refuses to pay for required weekly testing, refuses to permit employees to use company time to get weekly testing, and demands that weekly testing must be done by a licensed testing facility rather than home testing.

54. Defendants are taking these actions according to the mandates and guidance set forth by the Federal Government; Defendants, though private entities, are federal actors for the purposes set forth herein.

**D.  Federal law prohibiting religious and disability discrimination and retaliation**

55. The First Amendment and RFRA prohibit burdening the free exercise of religion.

56. Section 564 of the FDCA prohibits coercing the use of emergency authorized vaccines.

57. Title VII prohibits Defendants from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . .religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000eU).

58. In other words, "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Express,* 199 F.3d 270, 273 (5th Cir. 2000).

59. Title VII also prohibits the Companies from retaliating against employees for engaging in protected activity. *See Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004).

60. Similarly, under the ADA, Defendants may not discriminate against a qualified individual on the basis of disability.

61. Such discrimination includes "fail[ing] to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship.'" *Feist v. Louisiana*, 730 F.3d 430, 432 (5th Cir. 2013).

62. Additionally, the ADA makes it unlawful to retaliate against an employee for seeking an accommodation. See 42 U.S.C. § 12203(a).

63. Although Defendants permitted employees to apply for a religious or medical disability exemption and reasonable accommodation, similarly situated employees' requests for exemption and reasonable accommodation were treated differently and processed in a discriminatory manner.

64. Some of the similarly situated employees who applied for religious or medical exemptions were "granted" exemptions from the vaccine requirement, however, Defendants failed to engage these employees in any discussion regarding what accommodations could be provided, and these employees have not received any notification of what accommodations might be afforded to them. At the same time, these employees who are technically granted

exemptions have been told that they are subject to disciplinary action if not vaccinated by November 17, 2021, while others have been advised that they will be terminated without further discussion regarding religious or medical accommodations.

65. Some of the similarly situated employees likewise submitted requests for religious or medical exemptions, but their requests were subject to an arbitrary deadline for submitting their requests, and their requests were summarily denied due to submitting their requests beyond the deadline for submission chosen by Defendants, which was October 18, 2021.

66. These employees have been advised that they are subject to disciplinary action if they are not vaccinated by November 17, 2021, and that they will be terminated. These employees have been advised that their requests for religious or medical exemption and accommodation will not be processed or considered.

67. Some employees were given the opportunity to appeal denials to their requests for religious or medical exemptions and accommodations and did so. However, Defendants have failed to process their appeals in any meaningful way, and have not received further information regarding their appeals. These employees have been advised that they are subject to disciplinary action and termination if they are not vaccinated by November 17, 2021.

68. On November 10, 2021, the Task Force updated its Guidance for Federal Contractors and Subcontractors, to amend its deadline to be fully vaccinated, and extended the deadline to January 22, 2022.

69. Nevertheless, Defendants' deadline for employees to be fully vaccinated continues to be November 17, 2021, in spite of Defendants' failure to process requests for religious and medical exemptions in accordance with Defendants' legal obligations.

**E. Defendants' accommodation request system**

70. Defendants created means for employees to request accommodation to be exempt from Defendants' vaccine mandate.

71. Employees could request accommodation for religious or medical reasons

72. Defendants required all employees to submit requests for accommodation on or about October 18, 2021. Ex. 3.

73. After that date, employees were not permitted to submit accommodation requests.

74. In fact, requests received after October 18, 2021 were denied as untimely. Ex. 4

75. An employee that determined that he or she has a religious or medical basis for declining the vaccine after October 18, 2021, was left without a mechanism for requesting an accommodation from defendant companies. Such employees must either receive the vaccine or be terminated. Ex. 5.

**F. Plaintiffs' accommodation requests and Defendants' responses**

76. Danny Shortridge, an 11-year Radiological Control Technician for FBP, submitted religious and medical exemptions to FBP HR. His religious exemption was denied as late. His medical exemption was late but is pending review. *Id*.

77. Craig Moore works for PMA. He objects to the accommodations process and requirements.

78. Brenda Patton works for MCS, she was denied a religious exemption. She has submitted an EEOC Complaint. Ex. 6

79. Doug McLaughlin works for FBP. He submitted religious and medical exemptions which were denied. He has filed a complaint with the EEOC.

80. Gary Entler works for Centrus. He was granted an exemption but not a reasonable accommodation.

81. Dockie Tackett is a 31-year FBP employee with a stellar work history and a military veteran. He had COVID and has medical documentation to support the positive antibody presence. He was denied accommodation because he submitted his documentation too late. He spoke with Medina Stafford, at FBP HR, about the issue. She advised him they were not accepting any late requests and shared with him that they received approximately 20 late requests.

82. Christine Buttermore was hired by MCS as a remote worker. She lives in Paducah, Kentucky and is assigned to the Lexington Kentucky office. Moving to Lexington was not a condition of employment. She has been teleworking since being hired by MCS yet a telework accommodation was denied.

## CLASS-ACTION ALLEGATIONS

83. Plaintiffs bring this class action under Federal Rules of Civil Procedure 23(a) and (b).

84. Plaintiffs seek to represent a class of Defendants' employees who requested or will request accommodations to the vaccine mandate and who had accommodation requests either formally or effectively denied and are thus faced with the decision of either taking a vaccine to which they object, or suffering termination.

85. Plaintiffs anticipate seeking three subclasses when they move for class certification: (1) employees who have sought either a religious or medical accommodation and previously recovered from COVID-19, possess antibodies against COVID-19, and are willing to produce periodic proof showing that they remain antibody positive; (2) employees who sought religious

accommodations, lack COVID-19 antibodies, and are willing to submit to mitigation measures such as periodic COVID-19 testing and/or wearing masks; and (3) employees who sought medical accommodations, lack COVID-19 antibodies, and are willing to submit to mitigation measures like periodic COVID-19 testing and/or wearing masks. There may also be separate subclasses for employees.

86. The class is so numerous that joinder of all members is impractical. While the exact class size is unknown to Plaintiffs at this time, it is expected to be several hundred employees. The precise number and identification of the class members will be ascertainable from Defendants' records during discovery.

87. There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

> a. Did Defendants provide employees with an adequate mechanism for requesting an accommodation when it required requests to be submitted by an arbitrary date and prevented employees from requesting accommodations for both religious and medical reasons?
>
> b. Did Defendants comply with obligations under federal law to engage in the interactive process when responding to each accommodation request?
>
> c. Did Defendants comply with obligations under federal law to reasonably accommodate employees with religious or medical objections to the vaccine mandate.
>
> d. Did Defendants comply with federal law when they denied accommodation requests?

      e.      Did Defendants retaliate against employees who engaged in protected activity when responding to each request by formally or effectively terminating their employment or by engaging in coercive conduct to dissuade employees from requesting (or continuing to seek) an accommodation?

88. Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested accommodations to the vaccine mandates and Defendants denied those requests without engaging in the interactive process.

89. For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

90. The questions of law or fact common to the members of the class predominate over questions affecting only individual members, and a class action is superior to other methods for fairly and efficiently adjudicating Plaintiffs' claims. Joinder of members is impracticable.

91. Absent a class action, most class members would find the cost of litigating their claims prohibitive and would have no effective remedy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation, particularly as to liability because it conserves the courts' resources and promotes consistent and efficient adjudication.

92. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience prosecuting complex litigation and class actions. Neither plaintiffs nor their counsel have interests adverse to those of the other class members.

**COUNT I**
**Violation of the Free Exercise Clause**
**of the First Amendment to the United States Constitution**
**(28 U.S.C. § 2201, et seq.)**

93. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

94. The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the federal government from abridging Plaintiffs' rights to free exercise of religion. The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits states from abridging Plaintiffs' rights to free exercise of religion.

95. Plaintiffs have sincerely held religious beliefs that compel them to refuse vaccination.

96. As shown above, Defendants are governmental actors. Their actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of federal law. Alternatively, Defendants' actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of state law.

97. Defendants' refusal even to attempt to genuinely accommodate Plaintiffs after purporting to grant their requests for exemptions discriminates against Plaintiffs ( and others not before the Court) due to their sincerely held religious beliefs by forgoing any interactive dialog and by imposing harsh and punitive conditions on them solely because they have sought religious exemptions from the vaccine mandate.

98. Defendants' actions impermissibly burden Plaintiffs' sincerely held religious beliefs, compel them to abandon their beliefs or violate them under coercion, and force Plaintiffs to choose between their religious convictions and their continued employment.

99. Defendants' actions effectively strip Plaintiffs of the right to religious exemption by subjecting them to unduly harsh and punitive measures, including placing them on indefinite leave without pay, denying them benefits, opportunities for pay raises or bonuses, and

constructively discharging them, while affording those granted medical exemptions genuine accommodation and allowing them to remain fully employed.

100.    Defendants' actions place Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

101.    Defendants' actions put substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their jobs, professional standing, security clearances, reputations, and the ability to support their families.

102.    Defendants' interpretation and application of the vaccine mandate is neither neutral nor generally applicable as it grants the possibility of medical exemptions for reasons of secular "health" and allows those medically exempt to continue working but sentences those granted religious exemptions to exile without pay or benefits and without any real hope of returning to work.

103.    Defendants' actions thus target Plaintiffs' religious beliefs for disparate and discriminatory treatment.

104.    Defendants' actions create a system of individualized accommodations for preferred exemption requests based on physical health while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

105.    There is no legitimate, rational, or compelling interest in Defendants' exclusion of exemptions and accommodations for sincerely held religious beliefs, especially given the following facts: (a) those exempted for reasons of "health" are no less susceptible of contracting and spreading COVID (the prevention of which is the very reason for the vaccine mandate) than those who would be exempted for reasons of religion; (b) the available COVID-19 vaccines are

clearly failing to prevent transmission or infection, so that "booster shots" are now being promoted; (c) even the vaccinated must continue to wear masks as if they were not vaccinated because they can still be infected or infect others; (d) naturally immune persons who have recovered from COVID have superior immunity and do not need vaccination; (e) vaccinating naturally immune people may harm them by causing a hyper-immune response; and (f) some Plaintiffs and many others not before the Court have been working from home for many months, for whom accommodation would cost Defendants nothing.

106. Defendants' actions in denying genuine accommodations to Plaintiffs and others receiving religious exemptions are not the least restrictive means of achieving an otherwise permissible government interest, which could be achieved by the same protective measures (masking, testing, quarantining, etc.) already being required of the vaccinated and the unvaccinated alike for those on-site (including those exempted for health reasons), and by simply allowing those working from home to continue doing so.

107. Defendants' actions have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social, and economic consequences pleaded above.

108. Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs. Plaintiffs require declaratory and injunctive relief to protect their federally protected right to free exercise of religion.

### COUNT II
### Violation of the Religious Freedom Restoration Act
### (42 U.S.C. §2000BB-1)

109. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

110.    The Religious Freedom Restoration Act, 42 U.S.C. § 2000BB-1, et seq., prohibits the government from substantially burdening a person's free exercise of religion even if it results from a rule of general applicability, unless the rule is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.

111.    Defendants are government actors, as shown above. Their actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of federal law. Alternatively, their actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of state law.

112.    Defendants' actions in denying Plaintiffs and others any interactive dialog to discuss means for accommodating them and by imposing harsh and punitive measures on them such as leave without pay, the denial of medical coverage, denial of opportunity for pay raises or bonuses, and the prospect of imminent termination impose a substantial burden on Plaintiffs' exercise of religion.

113.    Even if Defendants' vaccine mandate and implementation were a rule of general applicability, which they are not, and even if they were in furtherance of a compelling governmental interest, they have not been applied in the least restrictive means.

114.    By failing to engage in interactive dialog with Plaintiffs and others given a religious exemption but doing so with those given a medical exemption and providing them accommodations that allow them to continue working, earning their salaries, receiving their benefits, and remaining eligible for pay raises and bonuses, Defendants have failed to further any compelling governmental interest by the least restrictive means.

115.     Defendants' actions have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their sincerely held religious beliefs and the occupational, professional, social and economic consequences pleaded above.

116.     Plaintiffs have no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs.

### COUNT III
### Violation of the EUA Statute
### (Asserted Under 21 U.S.C. § 360bbb-3)

117.     Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

118.     The vaccines available to federal contractors and employees to satisfy Defendants' vaccine mandates are only available under EUAs and are thus subject to the requirements of 21 U.S.C. § 360bbb-3.

119.     Under 21 U.S.C. § 360bbb-3, recipients of vaccines available under EUAs must have the right "to accept or refuse administration of the vaccines.

120.     Defendants' vaccine mandates would strip from their employees the right to refuse the EUA vaccines.

121.     Defendants' vaccine mandates for federal employees and contractors are therefore unlawful under 21 U.S.C. § 360bbb-3.

### COUNT IV
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious discrimination-failure to accommodate

122.     Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

123.     Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

124.    Plaintiffs informed Defendants of those beliefs and requested religious accommodations from the vaccine mandate.

125.    Defendants failed to engage in an interactive process with Plaintiffs regarding religious accommodation requests and instead only responded with denials of accommodations.

126.    Irrespective of the interactive process, Defendants failed to provide Plaintiffs with reasonable accommodations for their religious beliefs.

127.    Defendants thereby discriminated against Plaintiffs because of their religious beliefs.

128.    Defendants' failure to provide religious accommodations has harmed and will continue to harm Plaintiffs.

129.    By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless and in violation of Title VII.

130.    Plaintiffs have filed charges with the EEOC complaining of these discriminatory actions. Although Plaintiffs' EEOC charges remain pending, this Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process. *See Drew v. Liberty Mut. Ins. Co.,* 480 F.2d 69, 74 (5th Cir. 1973).

**COUNT V**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq.***
**Religious discrimination-retaliation**

131.    Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

132.    Plaintiffs engaged in protected activity when they requested (or wanted to request) religious accommodations from Defendants' vaccine mandate.

133.    Defendants responded almost immediately by announcing that it would formally or effectively terminate their employment. This was so even though Defendants conceded many of the requests for religious accommodation are legitimate by "granting" those requests.

134.    Defendants' responded to plaintiffs' protected activity by giving the employees the false choice between vaccination and effective termination.

135.    Plaintiffs' religious beliefs and protected activity were the causes of Defendants' adverse employment action. Defendants' disparate treatment of religious accommodation requests, arbitrarily cutting off the deadline for submitting religious accommodations, while potentially still accepting requests for medical accommodation (even though the end result is basically the same, confirms Defendants' hostility to requests for religious accommodation. Defendant did not bother engaging in an interactive process with accommodation seekers because it never intended to provide reasonable accommodation.

136.    By retaliating against plaintiffs for engaging in protected activity, Defendants violated Title VII. This violation harmed and continues to harm Plaintiffs.

137.    Plaintiffs have filed, or attempted to file,[5] charges with the EEOC complaining of these retaliatory actions. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process. *See Drew,* 480 F.2d at 74.

## COUNT VI
### Violation of the ADA, 42 U.S.C. § 12101, et seq.
### Disability discrimination—failure to accommodate

138.    Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

---

[5] The EEOC filing portal has been malfunctioning.  When functioning, dates for initial interviews are being scheduled for as late as March 2022.

139. Plaintiffs informed Defendants of their disabilities.

140. Plaintiffs requested, or wanted to request, reasonable medical accommodations from the vaccine mandate for their disabilities.

141. Defendants refused to engage in the interactive process with Plaintiffs regarding their medical accommodation requests.

142. Defendants violated the ADA when they denied Plaintiffs' accommodation requests.

143. Defendants thereby discriminated against Plaintiffs because of their disabilities.

144. Defendants' failure to provide medical accommodations harmed and continues to harm Plaintiffs.

145. By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless, and violated the ADA.

146. Some plaintiffs and class members filed charges with the EEOC complaining of these discriminatory actions.

147. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process. See *Drew*, 480 F.2d at 74; *Baily v. Dallas Cnty. Sch.*, No. 3:16-cv-1642-M, 2016 WL 7638146, at *2 n.4 (N.D. Tex. Dec. 9, 2016) ("Exhaustion of administrative remedies in the ADA context is similarly a condition precedent rather than a jurisdictional prerequisite to suit.")

## COUNT VII
### Violation of the ADA, 42 U.S.C. § 12101, et seq.
### Disability discrimination—retaliation

148. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

149. Plaintiffs engaged in protected activity when they requested (or wanted to request) medical accommodations from United's vaccine mandate.

150. Defendants responded by taking an adverse employment action against each employee by announcing they would formally or effectively terminate their employment.

151. Defendants' response to Plaintiffs' protected activity is an adverse employment action intended to force employees to forgo their medical reasons for not receiving the COVID-19 vaccine.

152. Plaintiffs' medical disability and protected activity were the causes of Defendants' adverse employment actions.

153. By retaliating against Plaintiffs for engaging in protected activity, Defendants violated the ADA.

154. Some plaintiffs and class members have filed charges with the EEOC complaining of these retaliatory actions. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process. See Drew, 480 F.2d at 74; Baily, 2016 WL 7638146, at *2 n.4.

## COUNT VIII
## Declaratory Judgment Act
## (28 U.S.C. § 2201, et seq.)

155. Plaintiffs restate the foregoing paragraphs as if set forth fully herein.

156. As described above, an actual controversy exists between the parties about the legality of Defendants' conduct toward Plaintiffs and other of Defendants' employees.

157. A declaratory judgment is necessary and appropriate as it would serve a useful purpose in clarifying and settling the legal issues between the parties and thereby afford relief from the uncertainty and controversy giving rise to this proceeding.

158. Plaintiffs will suffer significant and irreparable harm unless this Court intervenes.

**COUNT IX**
**Injunctive Relief**

159. By reason of Defendants' actions, plaintiffs will suffer actual and irreparable injury.

160. Plaintiffs have no adequate or speedy remedy at law.

161. No third party will be unjustifiably harmed if an injunction is granted prohibiting enforcement of the Mandate.

162. The public interest will be served by prohibiting enforcement of the Mandate.

**PRAYER FOR RELIEF**

Plaintiffs request that the Court:

a. Declare Defendants violated the First Amendment, RFRA, Plaintiffs bodily autonomy and right to refuse medical treatment and Section 564 of the FDCA by denying Plaintiffs' requests for religious exemptions and coercing them to take emergency authorized vaccines.

b. Declare Defendants violated Title VII and the ADA by failing to engage in an interactive process in response to requests for accommodations to their COVID-19 vaccine mandates.

c. Declare Defendants violated Title VII and the ADA by discriminating against employees by failing to provide reasonable accommodations to their COVID-19 vaccine mandates.

d.  Declare Defendants violated Title VII and the ADA by retaliating against employees who engaged in protected activity.

e.  Issue a temporary restraining order and/or preliminary injunction, *see Drew,* 480 F.2d at 74, followed by a permanent injunction, enjoining Defendants from terminating or placing on indefinite unpaid leave any employee who has a religious basis for seeking an accommodation, and enjoining Defendants from denying as untimely any request for a religious accommodation. The Court should enjoin such actions until Defendants complete the interactive process for employees who request an accommodation and Defendants have granted reasonable accommodations as required by federal law.

f.  Award Plaintiffs, and those similarly situated, damages including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages as applicable.

g.  Award Plaintiffs reasonable attorneys' fees and costs.

h.  Grant any other relief that the Court deems just, proper, and equitable.

i.  Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues upon which there is a federal right to a jury trial.

Respectfully Submitted,

/s/Warner Mendenhall
Warner Mendenhall (0070165)
Thomas W. Connors (0007226)
Mendenhall Law Group
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
tconnors@warnermendenhall.com
Attorney for Plaintiffs

## **JURY DEMAND**

A trial by jury is demanded for all issues so triable in this case.

Respectfully Submitted,

/s/Warner Mendenhall
Warner Mendenhall

I HEREBY STATE AND AFFIRM THAT I HAVE READ THE FOREGOING
VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST
OF MY INFORMATION AND BELIEF

Dockie Tackett (Nov 17, 2021 13:47 EST)

Nov 17, 2021

Name                                            Date