UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANNY SHORTRIDGE, *et al.*, : | |
| : | |
| Plaintiffs, : | Case No. 2:21-cv-5336 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| CENTRUS ENERGY CORP. *et al.*, : | Magistrate Judge Elizabeth P. Deavers |
| : | |
| Defendants. : | |

**OPINION & ORDER**

This matter comes before this Court on several of the parties' motions, including a Motion to Dismiss from Plaintiff (ECF No. 29), a Partial Motion to Dismiss from Defendants Fluor-BWXT Portsmouth, LLC ("FBP") and Mid-America Conversion Services, LLC ("MCS") (ECF No. 21), as well as another Motion to Dismiss from MCS alone (ECF No. 21). Additionally, this Court briefly discusses Plaintiffs' Motion for a Preliminary Injunction (ECF No. 2).

Pursuant to the foregoing, FBP and MCS's Partial Motion to Dismiss (ECF No. 20) as well as Plaintiffs' Motion to Dismiss (ECF No. 29) are **GRANTED**. Meanwhile, MCS's sole Motion to Dismiss (ECF No. 21) is **DENIED as moot**.

**I. BACKGROUND**

Defendants Centrus Energy Corp. ("Centrus"), FBP, MCS, and Portsmouth Mission Alliance, LLC ("PMA") all operate as government contractors in the nuclear energy industry. (ECF No. 1 at ¶¶ 26–29). Plaintiffs Danny Shortridge, Craig Moore, Brenda Patton, Doug McLaughlin, Gary Entler, Dockie Tackett and Christine Buttermore, all work for one of the Defendants in a variety of capacities. (*Id*., ¶¶ 18–25).

This action stems from President Biden's September 9, 2021, Executive Order 14042.

1

(ECF No. 1 at ¶¶ 1–2). "The Order [] required that, to the extent permitted by law, all existing and new contracts with the Federal Government, and those of subcontractors, include a clause requiring compliance with the Safer Federal Workforce Task Force guidance regarding COVID-19 safeguards. (*Id*., ¶ 3). One of these guidelines requires all federal contractor employees to be vaccinated by January 18, 2022. (*Id*., ¶ 5).

In compliance with these requirements, on approximately October 13, 2021, Defendants announced that all employees would be required to be vaccinated, unless they were legally entitled to an exemption. (*Id*., ¶ 48). These requirements were mandatory, except for Defendant Centrus, which allows employees to remain unvaccinated if they comply with weekly testing requirements. (*Id*., ¶ 53). Each Plaintiff applied for either a religious or medical exemption from this vaccine requirement, most of which, were denied. (*Id*.).

Plaintiffs filed their Complaint on November 17, 2021, alleging Defendants violated the First Amendment, as made actionable by the Religious Freedom Restoration Act ("RFRA"), Title VII of the Civil Rights Act ("Title VII") and the Americans with Disabilities Act ("ADA") by denying them religious and medical exemptions to the COVID-19 vaccine requirement and "coercing them to take emergency authorized vaccines[.]" (ECF No. 2 at 5). Plaintiffs asserted class allegations and sought monetary, declaratory, and injunctive relief. (ECF No. 1 at ¶ 162). Along with their Complaint, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") and for a Preliminary Injunction ("PI"). (ECF No. 2). Therein, Plaintiffs ask that this Court enjoin Defendants "from enforcing their mandated COVID-19 Vaccination Requirement Policy against Plaintiffs or to take any action against Plaintiffs because of their vaccination status[,]" as well as enjoining them from requiring Plaintiffs be vaccinated to continue their employment. (*Id*. at 4).

After receiving argument at the Local Rule 65.1 Conference (ECF No. 4), this Court denied

Plaintiff's TRO. (ECF No. 9). This Court determined that Plaintiffs had satisfied neither the immediacy nor the irreparability of harm elements necessary for this Court to issue a TRO. (*Id*. at 2). In so holding, this Court emphasized the facts surrounding each individual Plaintiff's circumstance, finding that a majority were not being directly impacted by the vaccine policies. (*Id*. at 2–3). After so ruling, this Court scheduled a hearing on Plaintiff's Motion for a PI. (*Id*. at 7).

In the lead up to that hearing, the parties filed several motions. Defendant PMA moved to bifurcate the preliminary injunction proceedings, removing itself from the proceedings, as it had voluntarily suspended the implementation of its COVID-19 vaccination mandate. (ECF No. 12). Furthermore, Plaintiffs sought leave voluntarily to dismiss Plaintiffs Danny Shortridge, Gary Entler, and Doug McLaughlin as well as Defendant Centrus. (ECF No. 13). This Court granted each motion on December 6, 2021. (ECF Nos. 14, 15). Thereafter, Defendants Fluor and MCS each moved to dismiss (ECF Nos. 20, 21), and Plaintiffs moved voluntarily to dismiss Plaintiff Christine Buttermore's claims (ECF No. 29). Then, in the week before the hearing, Defendants Flour and MCS sought a stay pending resolution of their Motions to Dismiss. (ECF No. 23). After holding a telephonic status conference, during which Plaintiffs similarly orally requested the PI hearing be stayed, this Court continued the preliminary injunction until such time as Plaintiff Patton completed her union grievance process. (ECF Nos. 22, 24). As of the date of this Opinion, this Court has received no word on the status of Plaintiff Patton's union grievance process.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). When evaluating such a motion, "[a]ll factual allegations in the complaint must be presumed to be

3

true, and reasonable inferences must be made in favor of the non-moving party." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). Complaints must state "more than a bare assertion of legal conclusions to survive a motion to dismiss." *Horn v. Husqvarna Consumer Outdoor Products N.A., Inc.*, 2013 WL 693119, at *1 (S.D. Ohio Feb. 26, 2013) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim to relief must be "'plausible on its face,'" with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### III. LAW & ANALYSIS

There have been several factual developments that have necessarily narrowed Plaintiffs' case—some Plaintiffs have been vaccinated, some were granted accommodations, one has been terminated, another is pursuing her union remedies; moreover, two Defendants have suspended their vaccination requirements. As the case currently stands, four Plaintiffs (Moore, Patton, Tackett and Buttermore) and three Defendants (Fluor, MCS and PMA) remain. The claims of one of these Plaintiffs, Christine Buttermore, are the subject of two of the aforementioned motions to dismiss.

#### A. MCS & Plaintiffs' Motions to Dismiss

On December 9, 2021, MCS moved to dismiss Plaintiff Christine Buttermore's claims, arguing that this Court did not have personal jurisdiction over them. (ECF No. 21). MCS argues that Ms. Buttermore, an MCS employee, lives and works in Kentucky and the decisions related to her exemption requests were made by people located in Kentucky. (*Id.* at 3). Because no part of Ms. Buttermore's claims arise out of MCS's contacts with Ohio, MCS maintains that this Court

4

lacks personal jurisdiction. (*Id*. at 3–5). While Plaintiffs did not timely respond to MCS's Motion, on January 3, 2022, Plaintiffs filed a Motion to Dismiss Ms. Buttermore's claims without prejudice, as she had gotten a new job and was no longer employed by MCS. (ECF No. 29).

Accordingly, and because "dismissal of an individual party, as opposed to the entire action, is properly conducted pursuant to Rule 21[,]" Plaintiffs' Motion to Dismiss (ECF No. 29) is **GRANTED**, and MCS's Motion to Dismiss (ECF No. 21) is **DENIED as moot**. Plaintiff Christine Buttermore is hereby **DISMISSED** from this action.

### B. Flour and MCS's Motion to Dismiss

MCS and FBP moved to dismiss Plaintiffs' complaint for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), and alternatively to dismiss Counts 1 and 2 of Plaintiffs' Complaint for failure to state a claim. (ECF No. 20). MCS and FPB abandoned the former argument, as shortly after filing their Motion each executed a waiver of service. (ECF No. 30 at 10, n. 4 ("FBP and MCS will execute waivers of service, which moots the argument that Plaintiffs failed to properly service them previously.")). As such, the only remaining issue is the dismissal of Counts 1 and 2 of Plaintiffs' Complaint for failure to state a claim.

MCS and FBP argue that because Plaintiffs do not plausibly allege that they are state actors, the Court should dismiss Plaintiffs' First Amendment and RFRA claims under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 20 at 3). The two Defendants argue that their status as federal contractors does not render them state actors, because "'[a]cts of private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.'" (*Id*. at 3 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982))). MCS and FBP maintain that under the "state compulsion test," there must be evidence the state "encouraged or somehow coerced" the private party to take a particular action. (*Id*. at 4). The moving

Defendants further argue that while each was subject to the vaccine mandate, they had sole authority over granting and denying exemptions. (*Id*. at 5). MCS and FBP assert that because Plaintiffs allege Defendants, not the Government, violated the First Amendment and RFRA by denying Plaintiffs' requests for religious vaccine exemptions, Plaintiffs have further failed to allege state action. (*Id*.). Moreover, regarding the alleged clause requiring Defendants reach at least a 90% employee vaccination, MCS and FBP argue Plaintiffs have misinterpreted this clause. (*Id*. at 6). Rather, say the moving Defendants, the clause offered incentives for reaching a 90% vaccination rate, but it was not required. (*Id*.). More importantly, MCS and FBP represent that this clause was rescinded shortly after it was issued. (*Id*.). Finally, the moving Defendants assert that this Court can consider extrinsic evidence in ruling on their Motion, as they "fill in the contours and details of the [C]omplaint[,]" or are publicly available government records. (*Id*. at 2).

Plaintiffs maintain that they have pled a case sufficient to show federal action by MCS and FBP when they initiated and enforced vaccine mandates on behalf of the federal government. (ECF No. 28 at 1). First, Plaintiffs argue that offering MCS and FBP payments to reach a 90% vaccination rate, constitutes such significant encouragement, that the choices of MCS and FBP to deny religious exceptions is attributable to the government. (*Id* at 4). To this point, Plaintiffs argue that whether sums of hundreds of thousands of dollars constituted such "significant encouragement" is a question of fact which cannot be resolved on a motion to dismiss. (*Id*.). Second, Plaintiffs assert that they have also sufficiently pled state action under the "symbiotic relationship" or "nexus" test. (*Id*. at 5). Plaintiffs maintain that the federal government is integral to Defendants' operations. (*Id*.). This ongoing relationship between the government and Defendants, combined with the contract providing vaccination payments, say Plaintiffs, illustrates a clear a symbiotic relationship or nexus. (*Id*.). Third, Plaintiffs assert that "[a]llowing the

Government to act through private employers is against public policy[,]" and "the democratic interests of the citizens of this country . . . ." (*Id*. at 8–9). Plaintiffs conclude by attacking the moving Defendants' reliance on extrinsic evidence, arguing that if the district court does consider such evidence, it converts the motion to one for summary judgment and must allow a reasonable opportunity to present material pertinent thereto. (*Id*. at 7–8).

Before this Court delves into Defendants' Motion, it first addresses a preliminary matter regarding the consideration of evidence. Generally, a Court may only consider the Complaint, and documents attached thereto, when ruling on a motion to dismiss. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). Furthermore, where "a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id*. at 335–36; *Young v. Int'l Union*, 148 F. Supp. 3d 602, 611 (E.D. Mich. 2015) ("This is especially relevant . . . where [p]laintiffs provide no documents with their [c]omplaint, yet reference a plethora of agreements and correspondence that are central to their claims."). "A court may [also] consider matters of public record . . . without converting the motion to one for summary judgment." *Commercial Money*, 508 F.3d at 335. Upon review of the materials relied on by the parties in the briefing on Defendants' Motion, this Court finds that they are matters of public record and/or central to Plaintiffs' claims. As such, this Court will consider these limited documents outside the Complaint without converting Defendants' Motion to one for summary judgment.

As this Court previously recognized, state action is a prerequisite to any claim under both the 1st Amendment and RFRA. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690–91, 134 S. Ct. 2751, 2759, 189 L. Ed. 2d 675 (2014) (direct federal action is generally required for a plaintiff to state a cognizable First Amendment RFRA claim). The Supreme Court has, however,

made clear that "a private entity may qualify as a state actor when it exercises powers traditionally exclusively reserved to the state." *Manhattan Cmty. Access Corp. v. Halleck*, ⸺ U.S. ⸺, 139 S. Ct. 1921, 1928 (2019) (internal quotations omitted). The Sixth Circuit recognizes four tests for determining when a private entity may qualify as a state actor: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). Plaintiff relies on both the state compulsion test and the symbiotic relationship or nexus test.[1] S*nodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co., Inc.*, 780 F. App'x 197, 204 (6th Cir. 2019). Under either test, the inquiry "begins by identifying the specific conduct of which the plaintiff complains." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999).

Plaintiffs' Complaint alleges that they have "sincerely held religious beliefs that compel them to refuse vaccination[,]" and Defendants violated both the 1st Amendment and RFRA by refusing even to "attempt to genuinely accommodate Plaintiffs [and] grant their requests for exemptions . . . ." (ECF No. ¶¶ 96–97, 112). Plaintiffs have maintained this theory throughout their case. (*See* ECF No. 2 at 15 ("In order to prevail, Defendants must show a compelling interest in denying Plaintiffs' exemption requests.")). This reliance proves determinative as, "[f]aithful adherence to the 'state action' requirement . . . requires careful attention to the gravamen of the plaintiff's complaint." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). The complained of action, at least as relevant to Counts One and Two, is the denial of Plaintiffs' religious exceptions. (ECF No. ¶¶ 96–97, 112). That action was taken by Defendants, not the federal government. The federal

---

[1] Under the former, a state must exercise such "coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 565 (6th Cir. 2007). Under the symbiotic relationship or nexus test, meanwhile, there must be a sufficiently close nexus between the state and the challenged action so that the action of the private party may be fairly attributed to the state." *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007).

guidance makes explicitly clear that "[t]he contractor is responsible for considering, and dispositioning, such requests for accommodations regardless of the covered contractor employee's place of performance." Safer Federal Workforce Task Force COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors at 9–10, https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf (last visited August 25, 2022). The only exception, where the agency that is the party to the covered contract is a "joint employer," does not apply here. The "complained of action" was under the complete discretion of Defendant, not the federal government. As such, the denial of Plaintiffs' religious exceptions cannot be attributed to the state for the purposes of Plaintiffs' 1st Amendment and RFRA claims.

Plaintiffs claim that the government significantly encouraged Defendants to deny religious exemptions by offering them financial incentives for reaching a 90% vaccination rate, is undermined by the facts. As clarified during the Local Rule 65.1 Conference, the DOE rescinded the contract provision shortly after issuing it, FBP and MCS removed these provisions from their federal contracts prior to Plaintiffs' case, and no reimbursements were made to either Defendant. Given these developments, Plaintiffs cannot sufficiently show they were subject to any state action. Even still, as this Court previously held, when the federal government "licenses, contracts with, or grants a monopoly to a private entity [that] does not [necessarily] convert the private entity into a state actor . . . " *Beckerich*, 2021 WL 4398027 at *3. Even if Defendants received federal funds because of enacting their vaccine policies, which they did not, any such financial incentive does not make Defendants *de facto* state actors. *Id*. (citing *Manhattan Cmty.*, 139 S. Ct. at 1928).

Accordingly, pursuant to the foregoing analysis, Defendant FBP's and MCS's Motion to Dismiss (ECF No. 20) is **GRANTED**. Counts 1 and 2 of Plaintiff's Complaint are hereby **DISMISSED**.

### C. Plaintiffs' Preliminary Injunction

FBP and MCS argue that should their motion to dismiss be granted, that ruling would moot Plaintiffs' Motion for a Preliminary Injunction. (ECF No. 30 at 1 ("[T]his motion will resolve whether there is any need for a preliminary injunction hearing.")). This Court disagrees.

Considering the previous disposition, Plaintiffs have six remaining claims. (ECF No. 1). While this Court previously ruled that Plaintiffs were unlikely to succeed on the merits of those claims, that ruling was necessarily preliminary. "Because of the lesser burden of proof required to support a motion for [injunctive relief] as contrasted with a motion for summary judgment, a trial court's disposition of the substantive issues joined on a motion for extraordinary relief is not dispositive of those substantive issues on the merits." *William G. Wilcox, D.O., P.C. Employees' Defined Ben. Pension Trust v. United States*, 888 F.2d 1111, 1114 (6th Cir.1989). As the Supreme Court and Sixth Circuit explain, this Court is not bound by its findings in its ruling on Plaintiffs' TRO. *Tri Cnty. Wholesale Distributors, Inc. v. Labatt USA Operating Co., LLC*, 66 F. Supp. 3d 974 (S.D. Ohio 2014). Moreover, as the hearing was stayed mid-briefing, Plaintiffs have not yet had an opportunity to file a reply brief. As such, the motion is not yet ripe.

This Court does, however, acknowledge the time elapsed since Plaintiffs filed their PI and the factual developments during that period. Moreover, Plaintiffs have yet to update the Court on the status of Plaintiff Patton's union grievance process. (ECF No. 24 at 1 ("The Preliminary Injunction hearing is hereby STAYED, until such time as Plaintiff Patton completes her union grievance process.")). Accordingly, Plaintiffs are hereby **ORDERED** to file a status report **within**

10

**ten (10) days from the date of this Order**, informing the Court whether they still intend to pursue preliminary injunctive relief.

### IV. CONCLUSION

Pursuant to the following analysis, FBP and MCS's Partial Motion to Dismiss (ECF No. 20) as well as Plaintiffs' Motion to Dismiss (ECF No. 29) are **GRANTED**. Meanwhile, MCS's sole Motion to Dismiss (ECF No. 21) is **DENIED as moot**. Plaintiffs are hereby **ORDERED** to file a status report **within ten (10) days from the date of this Order**, informing the Court whether they still intend to pursue preliminary injunctive relief.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 12, 2022**